**In re Richard SHARIF, Debtor.**

**Wellness International Network, et al., Plaintiff,**

**v.**

**J.P. Morgan Chase Bank, N.A., Defendant.**

**Dr. Waqar Khan, Shafqut Khan, Dr. Abdul Rashid, and Shaheen Rashid, Plaintiff,**

**v.**

**Wellness International, Network, et al., Defendant.**

**Bankruptcy No. 09 B 5868. Adversary Nos. 09 A 00384, 09 A 00385.**

United States Bankruptcy Court, N.D. Illinois, Eastern Division.

July 2, 2009.

L. Judson Todhunter of Defrees & Fiske, William J. Stevens, Lakeside, MI, for Debtor.

Michael J. Lang of Gruber Hurst Johansen & Hail LLP, Dallas, TX, Gina B. Krol of Cohen & Krol, for Wellness International Network, Ltd.

Garrett S. Reidy, Attorney for Waqar Khan, Safqut Khan, Abdul Rashid, and Shaheen Rashid.

Horace Fox, Jr. of Lehman & Fox, for Trustee.

## ORDER ON MOTION TO DISMISS AND ALTERNATIVE *MOTION TO REMAND/MOTION TO STRIKE*

JACQUELINE P. COX, Bankruptcy Judge.

In Adversary Proceeding 09–ap–00384, Dr. Waqar Khan and Shafqut Khan (the Khans) filed a Notice of Removal to remove a garnishment action from the 95th District Court for Dallas County, Texas to this Court as part of the underlying bankruptcy case. In Adversary Proceeding 09–ap00385, the Khans, and Abdul and Shaheed Rashid (the Rashids), filed a Notice of Removal to remove cause no. 3:05–cv–01367 from the U.S. District Court for the Northern District of Texas to this Court as part of the underlying bankruptcy case. Wellness International Network, Ltd., WIN Network, Inc., and Ralph and Cathy Oats (collectively, the Movants or WIN) ask that the court dismiss, remand, or strike the notices of removal.

After attempting to pursue a lawsuit in Illinois in contravention of the venue clauses in their contracts with WIN, the Khans, Rashids, and the debtor, Richard Sharif (Sharif), (collectively, the Respondents) sued WIN in the U.S. District Court for the Northern District of Texas for fraud, claims under the Racketeer Influenced and Corrupt Organization Act (RICO), and other claims regarding their contractual relationship with WIN. They were attempting to avoid their contractual obligations with WIN and sought damages of approximately $1 million.

According to WIN, the Respondents did not conduct any discovery in the Texas District Court action and refused to cooperate with WIN's discovery requests. The Respondents did not serve initial disclosures and, as a result, had admissions of fact deemed against them. WIN successfully moved for summary judgment alleging that those admissions conclusively negated each claim asserted by the Respondents and that they failed to introduce evidence on any claim. The Respondents appealed that judgment to the Fifth Circuit Court of Appeals. The Fifth Circuit affirmed all of the district court's ruling, stating in part:

A review of the record on appeal demonstrates that Appellants' untimely performance in this court mirrors a lengthy history in the district court of dilatoriness and hollow posturing interspersed with periods of nonperformance or insubstantial performance and compliance by Appellants and their counsel, leaving the unmistakable impression that they have no purpose other than to prolong this contumacious litigation for purposes of harassment or delay, or both. The time is long overdue to terminate Appellants' feckless litigation at the obvious cost of time and money to the Defendants by affirming all rulings of the district court but remanding the case to that court for reinstatement of its consideration of Appellees' motion for attorney's fees. In so doing, we caution Appellants that any further efforts to prolong or continue proceedings in this court, including the filing of petitions for

rehearing, will potentially expose them to the full panoply of penalties, sanctions, damages, and double costs pursuant to FRAP 38 at our disposal.

*Sharif v. Wellness Int'l Network, Ltd.*, 273 Fed.Appx. 316 (5th Cir.2008).

In accordance with the Fifth Circuit's ruling, the Texas District Court awarded WIN $655,000 in attorney's fees. The Respondents are jointly and severally liable for the $655,000 judgment; a subsequent appeal was later dropped.

WIN began collection efforts by issuing discovery to collect on the judgment. The Respondents refused to respond to the discovery requests and failed to attend court-ordered depositions. Various contempt proceedings ensued. The Rashids are alleged to have fled to Pakistan. The Khans and Sharif were arrested for contempt of court and were released on their own recognizance when they promised to comply with the many court orders that directed them to respond to post-judgment discovery requests. They did not comply with those requests. The District Court judge warned the Khans and Sharif about heeding court orders:

> Because of the history of it, because of the—as Mr. Hail just described it—the tortuous proceedings for both the Court and the defense in trying to get this to proceed along in any even close to normal lines of what should be lawful in a civil case, I want to make sure that Mr. Sharif and the Khans understand how serious this is.
>
> The last thing any court wants to do is put somebody in custody, take your liberty from you, because of a civil violation. But it is very clear to me that this money is owed, and it's not being paid. And every effort is being made to avoid the lawful process.
>
> So if the judgment isn't paid as soon as possible, I mean today, tomorrow, we're going to continue along these lines. And there will be custody, again arrest warrants from this Court issued that will again—if there's lack of compliance, I will consider that in contempt and you will end up back in custody.
>
> I wanted to get your attention the first time around. I think I have. And now I want to make sure you understand this will happen again if this isn't paid.
>
> I do not have any information from you, Mr. Sharif, or the Khans, that you can't pay this. That's the problem. You have refused to comply with the proper order of discovery.

*Sharif v. Wellness In'l Network Ltd.*, Case No. 3:05–cv–01367, Sch. Conf. Tr. pgs. 11–12, Feb. 10, 2009 (attached as Ex. 4 to Mot. of Wellness International Network, Ltd., Case No. 09–ap–00384, Dkt. No. 9 (June 9, 2009)).

The following colloquy occurred when the District Court questioned Sharif and the Khans as to why they were ignoring the court and refusing to satisfy the judgment:

> MR. SHARIF Your Honor, I do not have the money. But when the judge find [sic] that I have to pay, I will comply. That's number one.
>
> . . .
>
> Your Honor, and as soon as possible, we will have 100 percent of all the discovery. Just give me a little time, as much as a week or two weeks, and the other counselor will have 100 percent of everything you want.
>
> . . .
>
> THE COURT: So tell me what I have just said to you. I want to hear what you think is going on here.
>
> MR. SHARIF: I've got to produce 100 percent of the discovery within the time that Your Honor will indicate, no ifs or

buts. And that [is] what is going to happen, Your Honor

. . . .

THE COURT: But I say once again, before we adjourn, to Mr. Sharif and to the Khans that it is within your power and authority to get this resolved by paying the money and by cooperating with discovery. But you are now being warned by the district court supervising this case that if you don't do that, that I will order further sanctions which, as you know, can include something as severe as a bench warrant or arrest warrant, which I don't want to do. It is the last thing a district court wants to do.

Dr. Khan?

MR. KHAN: We don't have the money. How will we come up with the money?

THE COURT: This is what I have been trying to emphasize to you, and I—

. . .

MR. KHAN: We have a house, and I have a job. That's all I have.

THE COURT: You have to respond to discovery. You have to let them know in writing with every last detail, with no objections, everything about your financial status that they are asking you. Do you understand that's been the problem until now?

MR. KHAN: We have been doing that. I don't know. That's why we were not happy with that attorney.

THE COURT: Now you know that it hasn't been done, and it's completely your responsibility, Mr. Sharif and Dr. and Mrs. Khan, to comply with this regardless of whether or not you have counsel representing you. You brought this case, and now you have to bear the consequences. So you have to answer the questions. You have to comply with the orders. Be in recess.

*Id.* at 12–13, 58, 68–69.

Sharif's filing of the underlying bankruptcy case followed.

WIN filed a writ of garnishment in state court in Dallas, Texas against J.P. Morgan Chase, N.A. (Chase) to attach funds held in bank accounts owned by the Khans. Sharif and the Khans now seek to remove the garnishment action and the collection proceedings before the U.S. District Court in Dallas to this Court. The Bankruptcy Removal Statute at 28 U.S.C. § 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).

■ Removal under § 1452 appears to be available to matters pending in both state and federal courts. In contrast the General Removal Statute 28 U.S.C. § 1441 allows removal only from state court to federal court. 28 U.S.C. § 1441. WIN argues that a federal cause cannot be removed to another federal court. Section 1452 does not have language limiting it to matters pending in state court. The problem herein, however, is that the cause was not removed "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452. The adjudicated matter with a judgment for attorney fees and the garnishment matter, if eligible for removal at all, could only be transferred to the U.S. District Court for

the Northern District of Texas, where the adjudicated matter is already pending.

The Court notes that there is no legal authority to support removal from a federal district court to a bankruptcy court. *See Thomas Steel Corp. v. Bethlehem Rebar Indus., Inc.*, 101 B.R. 16, 21 (Bankr. N.D.Ill.1989). I agree with WIN that interpreting the statute to hold otherwise would jeopardize the district courts' referral authority regarding bankruptcy matters and undermine 28 U.S.C. § 157 which gives district courts the authority to withdraw cases from the bankruptcy courts. Removal from district courts to bankruptcy courts would also undermine district courts' power of appellate review of judgments, orders and decrees of bankruptcy courts under 28 U.S.C. § 158.

In 1978, Congress created bankruptcy courts as independent tribunals with jurisdiction over bankruptcy cases and related proceedings. In *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the Supreme Court held that because bankruptcy judges were not given life tenure and salary protection that the 1978 legislation was unconstitutional. In 1984, Congress placed jurisdiction over bankruptcy matters in the district courts and allowed bankruptcy judges to hear only those cases referred to them by district courts. I also agree with bankruptcy Judge Wedoff that "In light of the plain language of Section 1452 and the overall jurisdictional scheme of the 1984 amendments, it must be concluded that removal from the district court to the bankruptcy court is not permitted." *Thomas Steel,* 101 B.R. at 21.

The Khans and the Rashids suggest that the Texas matters should be heard in the bankruptcy case to litigate their liability to WIN in the removed action or when WIN files a claim herein. They also suggest that the Khans and the Rashids are co-debtors herein. The liability of the Debtor and his co-defendants, the Khans and the Rashids, has already been adjudicated. There is no need to do so herein and the doctrines of *res judicata* and collateral estoppel would prohibit re-litigation of those matters.

The reliance of Debtor Sharif, the Khans and the Rashids on *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715 (Bankr.W.D.Pa. 1982) for their position that removal to a bankruptcy court is authorized by § 1452 is misplaced. The version of the statute noted in that case is outdated. It has been repealed and no longer provides for removal to a bankruptcy court; § 1452, its successor, now provides for removal to the district court.[1]

Further, the Court notes that the Respondents have ignored 28 U.S.C. § 1404 which allows change of venue from one district court to another. Section 1404 provides:

(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may be brought.

(b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or

---

1. Section 1478, relied upon by the *Stamm* Court, has since been repealed. That statute provided:

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

28 U.S.C. § 1478 (repealed 1984).

hearing thereof, may be transferred, in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.

(c) A district court may order any civil action to be tried at any place within the division in which it is pending.

28 U.S.C. § 1404.

By ignoring the change of venue provisions of § 1404, it appears that the Respondents may be engaging in forum shopping so that they may challenge matters decided by the Texas District Court and the 5th Circuit Court of Appeals without incurring further contempt orders.

The Khans and the Rashids are not left without relief. Should they have the right to do so, the Khans and the Rashids can file a claim in this matter for contribution or indemnification. There is no need to transfer an adjudicated matter to this Court to efficiently administer the bankruptcy estate herein. There is no danger of interference by the district court in the administration of this bankruptcy estate.

■ The Notices of Removal in 09–ap–00384 and 09–ap–00385 are dismissed. The parties who "removed" the adjudicated federal district court case and the Texas state court garnishment case proceeded without a legal basis to invoke the jurisdiction of the bankruptcy court to hear the matters "removed." The court declines to remand the matters; remand is available for matters that have been properly removed. This order of dismissal is the better response to the removal attempt herein; the removal effort was not warranted by law.